1913-02 and 1913-04, Demetrius Edwards and Bryant Lamont Royster v. Warden Sherry Burt and Kevin Lindsay. Arguments not to exceed 15 minutes per side. Mr. Moffitt for the appellants. Morning. Good morning. None of us checked out the mall parking lot. I want you to know none of us checked out the mall parking lot. You don't have to worry about that. Thank you. David Moffitt on behalf of the petitioners in both cases. Briefly with respect to the facts, unless you'd not... No need for the facts. Very fine. Just get to your best point. All right, very good. Let's get to, we believe we're entitled to de novo review. And I'd like to get to what the state and we actually seem to agree on here. And that is... Let's do that. Let's forget all the procedural stuff and just talk about this as a pure chronic case and just decide whether you're on the right side of that line. What's your best argument as to why you're on the right side of that line? I don't follow that question perfectly. I'm sorry. Well, just say that this was a critical part of a critical stage. That's the chronic point. Yes. Counsel was not there when the judge went on the second visit to see the lighting. Right. Are we on the same page? Yes. Okay. Let's just talk it straight up, de novo review. What's the case that says you're right on this point? Van versus Jones. Well, tell us what happened in that case that says it obviously wasn't the lighting of a parking lot and a judge visiting for the second time. I'm going to guess. Well, let me try and even cut more closely to the point. If... Well, I'll tell you why I'm not sure you're right about chronic, just in a pure de novo review. Okay. The other side of the critical stage line is the admission of evidence, which is often subject to harmless error review, which you need to get away from, right? You want a structural error, right? You want to show structural error or that it's jurisdictional, whatever it is you want to call it. Exactly. The side of the line that is not helpful to you talks about cases with admission of evidence. Satterwhite? Exactly. Okay. And why doesn't this case look a little more like evidence? I mean, that's the whole point, to see what the lighting was like at night. Because this pervades the entire trial. I believe that this finder of fact, and this is a judge going to a scene, of course, and there's only one eyewitness in this entire felony murder trial. And that's... Findings of fact, witnesses, they all sound evidentiary. Findings of fact, only one witness, that's all evidence. That's what I'm struggling with. Oh, chronic is about pleading guilty, these critical stages of the case where you need your counsel to decide whether to do this or do that. This is an evidentiary issue. Anyway, I'm asking the question. It's for you to answer. I don't see it as an evidentiary issue. I think that Satterwhite does not apply here. I do not... I think this pervades the entire trial because the entire trial is that eyewitness. And to say it's just evidence, I mean, this is the entire trial. It pervaded the entire trial because this is the finder of fact who went there and had his opinion completely twisted by, say, what he saw individually. And there's nothing in the record regarding that the scene was the same as it was those couple years, that time before. There's nothing in the record about that. He just went out there and said, oh, I see it's well lit. So therefore, the witness must be telling the truth or must be credible. And case closed. There's no objection to it, right? That the judge advised counsel that he did it. Gave counsel an opportunity to raise an objection and there was no objection. It was after the fact. I mean, what... Don't, just... Can you answer my question? Was there an objection when the judge advised counsel he did it? I believe there were objections beforehand, but not afterwards. And I'm submitting that any objections would have been futile. Would it be a different case if the jury were the trier of fact and the jury on its own went to the scene, made the observation, came back, told the court, we went to the scene, made the observation, counsel did not object? Would the result be the same if the jury were the trier of fact? And if not, why not? Well, because here we know what the trier of fact actually thought. When the jury speaks, we don't know what they thought. But here, the trier of fact was the judge and he said it was... Even more important to raise an objection at that point. If you think the trier of fact has been prejudiced by extrajudicial activity here, and that even gives you more of a reason to object. Well, I think we're going back to a procedural aspect now. I mean, I don't see... I think that's what... I mean, I think it's evidentiary as well. I think I review for plain error. I don't see the judge making a ruling depriving you of counsel. And that's what chronic is, is deprivation of counsel. And here, counsel wasn't present, but I don't see the deprivation. I wouldn't say it's deprivation. I would say it's absence. You don't have to have your counsel take it away or something. There's a lot of things counsel would be absent for, but if there's not an objection to it, we don't normally reverse. First, it's a jurisdictional defect. You don't have to object to it. As we know from Powell and from Hunt versus Mitchell... Structural defect as opposed to jurisdictional. What... Well, jurisdictional defect, Powell versus Alabama says that is a jurisdictional bar to conviction and sentence, not to have counsel at a critical stage of the proceedings. And here, they did not have counsel at a critical stage of the proceedings. The trier of fact went out there himself without any notice to counsel, without any counsel, and came back and reported it. At this point, an objection would clearly be untimely and futile. You can't unring the trier of fact's bell. Objections have to be made to preserve the issue. I mean, that's basic. They don't have to be... Whether it's not going to change the result or not, there's a duty to preserve objections. Not with respect to absence of counsel at a critical stage. Why couldn't you unring this bell? Why wouldn't it have been appropriate if counsel really thought this was prejudicial to say, Your Honor, thank you for telling us that. We're uncomfortable that you were there without us. We hereby move for a mistrial. Well, you got that option. That's exactly what should happen, and that's what did not happen. That's option A. But option B, assuming the judge denies it, is we'd like to go back, same time of night, and ask you why you think this shows it was well lit, and explain to you why we think things have changed in the last two years, or why we don't understand your view that this counts as well lit. I don't understand why that wasn't an option, assuming a mistrial wasn't granted at that point. I would submit that this is the kind of error that need not be objected to for a variety of reasons. You want a second bite of the apple. You want to go through and hopefully get a not guilty verdict. If we don't, we've got an appellate issue in our pocket, and we'll raise it later. And it's gamesmanship. There's no gamesmanship here. I'm just trying to ask a different question. Why can't you unring this bell? I know what your doctrinal answer is, but tell me practically why you couldn't go back with this judge and just say, we want to do this with you, because we think this is important. Why couldn't you the next night, assuming similar weather conditions, why couldn't you have done that? I don't get it. Practically speaking, do you really think we could change a judge's mind who decided to go out to a scene all by himself, without any evidentiary foundation as to whether the scene was the same, and came back and says, this is what I saw. This is what I found. This is what I decided. You can't talk to a guy like that, frankly. Very difficult to unring a bell like that. A kind of bell that would go out and do this kind of thing, if that's what you're asking me. Well, you know, he admitted it. We don't know. Maybe he was just driving. It's on the way home, for all we know. But the point is, he admitted it. I don't know why that says he can't look at it with you. If you think there's some critical stage of the proceedings, the lawyer needs to be there explaining what the judge did see and didn't see. That's not obvious to me. Well, he's a fact finder. I don't see that you can explain to him what he saw and what he didn't saw, necessarily. He saw it, and he decided. And we didn't know what he decided until after he gave his recitation of his findings in the case. He didn't come back and say, hey, here's what I think right in the middle of the trial. He saved it till the end. So we don't really know what he thought. We aren't really sure to what extent he was misinformed. The entire extent of the prejudice couldn't be clear, in my belief. All right, well, we don't wish to hear the procedural aspects. Was that clear? He wanted to- No, no, no, no. I just wanted to cut to the chase. You can talk procedure all you want. I just wanted to hear your answer to why there's really a chronic violation without all the procedural problems. But you're free to argue those as well. Well, there's a chronic violation because there's an absence of counsel. It doesn't have to be deprived. It's just an absence. And there was no notice that this was going to happen, which fits into some of the cases. And there was no counsel there. These are beyond question. So we definitely have an absence of counsel. And there's really no question that it's at a critical stage of the proceedings. All the case law is very clear on what this means. What's the best one or two cases? Sorry? What's the best one or two cases that if we go look at it, we'll say, Eureka, there is a chronic problem here? Johnson versus Zerbst. Johnson and, Johnson versus Zerbst.  Isn't that, that's a wholly different line of case law. The absence of counsel and a critical stage of the proceedings is a jurisdictional defect. No, no, no. What's your best case with a chronic violation that's similar to the judge visiting the scene of the murder? I'm not sure there is one that clearly. I mean, the Court of Appeals discusses federal case law and itself it concluded that this was an absence of counsel at a critical stage of proceedings. Which is binding on the federal courts in habeas review. Also, Judge Guy, earlier when you were asked about a case, didn't you mention the Vann case? Yes, Your Honor. And in the Vann case, among other things, they say, discussing the cases, and they say the common thread is whether there was a reasonable probability that the defendant's case would suffer significant consequences. From the denial of counsel at that stage. And I don't think you make a strong case about the significant consequences. It sort of implies there's a balancing act that goes on to this. And in that same vein, there was a lot more evidence in the case than just the one I witnessed. Very well, but I think there is significant Sixth Circuit precedent that when there is this situation, this absence of counsel at a critical stage of the proceedings, that is a chronic violation. It is a structural error. There really is no exception to this. I can distinguish Satterwhite, for example, and the other case that the people cite, Mitzel. Judge Griffin, did you have a question? Yeah, what if the judge had gone to the scene and then taken a picture of the scene? Came back with his picture and said, counsel, I went to the scene, visited it. Here's the picture. I'm going to introduce this as an exhibit at trial. Both counsels say no objection, your honor, to the introduction of this picture of what you saw at the scene. Would that be a chronic violation? I'm saying you can't unwrite. You can try and keep evidence out of trial, but you can't unwrite what's in the finder of facts mind. The question is, would that be a chronic violation? Yes. Okay, because he introduces an exhibit that counsel was not present when the photo was taken? That's a violation of counsel? That happens in criminal cases all the time, by the way, that exhibits will be introduced, that one side will take this, one side will take that. Counsel wasn't present when the photograph was taken, but there's no deprivation of counsel, is there? I think there's an analytical problem with that question. Okay, tell me what it is, then. I'm trying. This is about the finder of fact going to the scene. Finder of fact is that would never happen, your honor. Rather than have it in his head, he actually takes a picture, and here it is. It's a desert island example. It would never happen. It did not happen here. I mean, we can analyze these things in... No, it's the same concept. Your theory is picture is worth a thousand words, being there is worth 10,000 words. That must be your theory. I mean, it's the same thing. And there's no deprivation of counsel for exhibits that are introduced without objection, without counsel having been there when that picture was taken. I think to say... Yes, it's evidentiary, but I wasn't there when the evidence was taken, but... To reduce this situation to a mere evidentiary problem is to trivialize it by using what I examples and extremely attenuated applications of principles. You can keep thinking about this point, and you'll get your full rebuttal. And Judge Guy, did you have any other questions at this point? I do not. Okay. Thank you. We'll hear from the appellee. Thank you, Mr. Moffitt. Good morning, Your Honors. May it please the court. Jared Schultz, Assistant Attorney General for the State of Michigan, on behalf of the respondent wardens in those cases. I'll skip over the procedural argument at first, because I know this court has questions on... I'm concerned of whether we have deference under F or not. Sure. I'm sorry, go ahead, Your Honor. Do we have F to put deference here? Absolutely, Your Honor. There was a marriage adjudication for both the petitioner's claims in this case. For Edwards, the court, although it did a waiver analysis for the first claim, it then went on and did a plain error analysis for the first viewing. It then went on and did a plain error analysis for the second viewing. It held that we were viewing this for outcome-determinative error. And then the court went on to talk about why this wasn't outcome-determinative error. And that, under the Stewart case, which the court recently decided, that is a merits adjudication here, subject to a deference. Okay, but is visiting a scene a critical stage in the criminal prosecution? And is there not a Supreme Court case that says that? Correct, Your Honor. There is no Supreme Court case that says visiting the scene of a crime by the fact finder is a critical stage in the proceedings. So that's critical that it's not a clearly established law by the Supreme Court? Correct, Your Honor. And in Woods v. Donald, which I think both of the appellee briefs cited, that's the exact holding of that case. It said if there is no critical stage, or excuse me, if the Supreme Court has not held a specific stage as a critical stage, that dooms the claim for habeas purposes because there's no clearly established federal law on that point. Under Michigan law, does the phrase outcome-determinative error equal plain error? Yes, Your Honor. The plain error analysis, that is, I believe, the third element to show plain error is that it has to be outcome- And that's an accepted shorthand for plain error review when they say it that way? Well, I don't know if it's shorthand, but it's- So the elements of plain error review are there is an error, the error was plain or obvious, and then that error was outcome- I believe they use the language outcome-determinative. It also affects the fairness and integrity of the judicial proceedings, right? Correct, and that's- I'm not sure that that part is- that's part of plain error, but I'm not sure that's part of outcome-determinative, but that's- Correct, it's a whole separate element, Your Honor. So walk me through the pedeference point. Sadly, I have to relearn this almost every case. So you have a procedure that the state has. It enforces it. That's the failure to object at the right time. They do plain error review, and they fail. So that's the, quote, procedural default. That means no claim in federal court unless you can show cause and prejudice, right? So usually that's what happens- Correct. Which usually leads you down the ineffective assistance road. Right, which hasn't been raised here. Okay, so where- what's the- what's the ruling of the state court that gets at pedeference? In this court, and- one second, Your Honor. I believe it was- yes, Stewart v. Trillweiler has held that when a court- a Michigan court does a plain error analysis, that is also, alternatively, a merits adjudication. And that's always, or just when it- it decides whether there was error? So in other words, I could see someone saying, if they have an analysis that says, this wasn't even error, that sounds like a ruling that would get at pedeference. But when they say it's not outcome-determinative error, that, in my head, gets a little complicated as to why that gets at pedeference. Well, because they analyze the claim regardless. Just because it's not plain error, outcome-determinative error, they still analyze the claim, in this case, and said that- What if they said it was wrong, but just not plainly wrong? I think that might be a little different, Your Honor. Yeah, I'm trying to figure out- that's why I'm- I mean, I read the state court decision, it wasn't obvious to me whether they were focusing on the, it wasn't clearly wrong, as opposed to it wasn't wrong at all point. That's what's hard for me. Well, I don't see where they say that it- this would have been error, had we not been reviewing for plain error. They say this wasn't error at all. And I think that is, under the Stewart case, that's subject to- at pedeference. Okay. What's your best case for how this is on the good side of the chronic line? This is more like putting in evidence, as opposed to critical stages like plea bargaining, or having counsel present when testimony is going in, and all that? Well, I think this is very similar to Satterwhite itself. It's- Satterwhite says that if it's- the stage is related to admission of evidence, then you can review it for harmless error. Also, the- I believe I cited it in our case, Mitzel v. Tate, same thing. That was actually a right to counsel claim, where they cited Satterwhite and said harmless error applies in this case. And on that point, again, Satterwhite says that unless it pervades the entire proceeding, you can apply harmless error. There's- I don't think there's any way you can say that this- if it's error, it pervaded the entire proceeding. The- not only did all the court see was- or observe was the lighting of the scene, but that evidence was already in the case. Admitted, the witness herself testified that the lighting was good there. So you can- as the- I cited a Michigan Supreme Court case that talked about the difference between Satterwhite and Cronic, which I know is not binding on this course, but it does- it's a good persuasive- How would it- how would it all work under Cronic? No deference at all. There's an expert that's hired on behalf of the prosecution, and the job of the expert is to come in and just say, here's the way the lighting worked at that time of the day. And it's really like this, and maybe did some demonstrative evidence to try to maybe put the lights down in the courtroom, and did some other things to show to a jury. Imagine it's a jury. And so this expert comes in and gives all this evidence to say what you could see at eight at night, whatever it was when the crime occurred with this kind of lighting. And that whole expert, that's the only job of that expert, that whole expert's testimony occurs without counsel present. So counsel can't object, counsel can't do anything. Would that not be a Cronic violation? If it was- No counsel. Testimony? Yeah. Again, I think if it's just related to the mission of evidence, that's not exactly the same as Satterwhite, but there was an expert in Satterwhite. I mean, there's some cases that talk about chronic applying when testimony is introduced, like witnesses appear. Well, for testing- In my example, I have an expert witness who has just one job, and for that whole, whatever it is, half hour, counsel's not there at the trial. I think that's a little bit, that's just-  Correct, and I think that's- Why is it different? I don't understand why it's different. Well, because here there were objections allowed. The court came back, put it on the record, said, this is what I observed. Is there any point to be made on that subject? And both attorneys for Edwards and Royster said, no, there's nothing. They could have objected, said, your honor, you can't consider that, or your honor, we need to go back. And so in my hypothetical, after this half hour testimony, the lawyer comes back and objects and says, what? You did this without me? I object, mistrial. Wouldn't you have a mistrial? What's the question? I'm sorry, your honor. Wouldn't you have a mistrial? So in other words, the lawyer's not there for that half hour of the expert explaining how the lighting worked on the night of the murder, which shows you what the witness could or could not have seen. It's done. The lawyer comes back. God knows why he wasn't there, but I get to make these things up, so he wasn't there. And now the lawyer hears about this and goes, are you kidding me? I can't, to quote your friend on the other side, I can't unring the bell. We've got to start all over here. Well, I think it would depend on what exactly was omitted, how much evidence was omitted. Here, again, if that was the crucial part of the case, this expert testimony. Everything about my example is the same as your case. Then I think absolutely you could unring that bell. It's such a minute part of this case. There was significant other evidence against these people. All it really went to, this lighting aspect, is the weight of the testimony of how you evaluate the credibility of this witness. And again, there was already testimony, already evidence from her testimony saying that the lighting was good. I was able to see Mr. Royster, Mr. Edwards. I was able to identify them. You can sufficiently separate out what the judge saw from the rest of the proceeding, the rest of the evidence, and say, well, yeah, this was harmless. There was all this other evidence. Mr. Edwards tossed a gun in another case at a different mall. That gun linked back to this murder in this particular case. Both petitioners were seen on video camera. Mr. Royster was identified as a driver. There is just significantly other evidence in this case that you can sufficiently separate out what the judge saw or, in your hypothetical, what the expert would have testified to that you can evaluate whether that was harmful or not. OK. I think maybe the better example would be not during the trial. I think the entire trial is a critical stage of the proceeding and even jury selection, I think, is. But the better example would be, is there a deprivation of counsel if the prosecution's expert goes out to the scene on his own, does all this investigation on his own without defense counsel being there, and then comes into the court and testifies as to what he thinks, defense counsel object. I object. I wasn't there when the prosecutor's expert came, went to the scene, and did all this lighting. I don't think there's a deprivation of counsel. I mean, that's totally evidence, and you can cross-examine the evidence, and there's no right of counsel to be at every stage where evidence is gathered, that's all. Correct. I think that's the better analogy. OK. I would agree with that, Your Honor. OK. Absolutely. Judge Guy, do you have any questions? Nothing further from me. I think we understand your argument. OK, thank you. Thank you, Your Honors. I would just ask that this court affirm. OK. Thanks, Mr. Schultz. Mr. Moffitt, you've got, I think, some rebuttal. Thank you. Respectfully, I don't think that is a good example for this case. The prosecution expert goes to the scene and comes back and submits the evidence. That's not what happened here. That's not what we're examining. And that's to say that if an apple and an orange is the situation, and then come back and say, well, what if a fruit presented the evidence? No. It was apples and oranges. It was finder of fact, prosecution expert. There is no relation of that example to this situation. I guess the example was whether the jury did it rather than the judge. Say the jury is the trier of fact. I don't think you gave me a good answer on that. Would it be a deprivation of counsel if the jury did this? They came back, told everybody, hey, we did this. And everybody says, we have no objection, jury. You would have a chronic objection at that point? I don't think we have to consider that situation because we're talking about a judge that's a finder of fact. I don't think we have to try and project onto a situation that didn't occur here, conceptually or otherwise. That's not what happened. This is very specific. It's not . . . Answer my question. Is that it? I'm unable to say at this time. So tell me, what's your response to this, one of our cases, Stewart? I don't know if you've looked at it. Stewart versus Triwiler. So this is the question of whether EDPA deference applies and whether you can have EDPA because of a plein air review and so a certain part of the analysis by the state court. Because this case is very different. I mean, it's obviously a harder case for you if EDPA applies. So how do we deal with Stewart? Because it does sound like it's on point. Do you have an answer to how to deal with that point? I can. There are cases that . . . Forgive me. That are contrary to Stewart versus Triwiler, as you know. Frazier versus Jenkins. Gels versus Mitchell. Bengay versus Johnson. Lundgren versus Mitchell. These are all Sixth Circuit cases, 2006 for Lundgren, 2014 for Frazier. So your point would be, Stewart's a problem, but there's no reason you should apply Stewart. You have these other lines of cases where you don't apply EDPA deference. That's what you're saying? These other cases . . . Those are all cases where there was plein air review in the state court and EDPA deference wasn't applied to part of its ruling. Is that what you're saying? I'm saying that these cases are earlier than Stewart. Those cases have not been overruled by an on-bank decision of this court. There's tension there that I'm unable to resolve here that, undoubtedly, the Sixth Circuit will have to . . . Which is the best of those cases? Sorry? Which is the best of those other prior Stewart cases? Making your point for you. I'll say the most recent one, Frazier, is the most recent one. I'm not sure I could discern between them. They all are to the same effect. I would notice that Judge Guy and yourself did say in Stanley versus Burt that plein air analysis is not equivalent to a decision on the merits. Accordingly, we would have de novo review. I merely wanted to note that. Yeah. Okay. Thank you so much. Is there anything else you wanted to say? Yes. With respect to Satterwhite, first of all, I'll deal with Mitzel first. Mitzel had nothing to do with the questions we're having here. It had three questions. It was about whether a shotgun should have been admitted into evidence. It was three questions. It had nothing to do specifically with the absence of counsel at a critical stage of the proceedings. I have discussed it at length at page 21, note 17 of my reply in the Royster case. I don't have the time to go into great detail on it, but I did there. Additionally, with respect to Satterwhite, this court in Vange versus Jones did an exposition of critical stage doctrine from the 60s to the 80s. It did not even mention Satterwhite. It said that chronic continues to be the dominant decision in critical stage doctrine. I don't think this court can apply Satterwhite and try and parse out harmless error here. I think all the precedent in this circuit is contrary to that. And there's, for example, U.S. versus Ross, we see no reason to create an exception to our established rule that complete deprivation of counsel during critical stage warrants is anything but automatic reversal without a consideration of prejudice. There is a difference in the way Edwards and Roysters were decided by the Court of Appeals. Your honors may be aware of this? Yeah, we are. I think we understand that. All right. Very good. I see your time is up, Mr. Moffitt. So thank you very much. We appreciate the briefs from both of you and for your argument today. Grateful for this opportunity. All right. Thank you. The case will be submitted and the clerk may call the third case.